HAIL & KIBBY DRY GOODS COMPANY, a Corporation, Appellant, v. E. G. CASSIDY, Respondent.

Kansas City Court of Appeals, February 16, 1914.

CONTRACTS: Construction. The plaintiff owned a store building and leased it to the defendant for five years, beginning January 1, 1902, and ending January 1, 1907. On April 21, 1906, a fire destroyed the building and plaintiff agreed to release

the defendant from liability on the lease, if he would construct a building during the year 1906 and give him half of the rent in excess of $220 per month. The defendant erected a building and leased it to a third party for a term of five years after the building was completed at $312.50 per month. The defendant failed to pay the rent for February, 1907. *Held,* that the plaintiff was entitled to rent for January under the contract.

Appeal from Pettis Circuit Court.—*Hon. H. B. Shain,* Judge.

AFFIRMED.

*G. W. Barnett* for appellant.

*George F. Longan* for respondent.

TRIMBLE, J.—This suit involves the construction of a contract between the parties executed April 21, 1906. This contract was in writing and grew out of the following state of facts:

Plaintiff held from defendant, as the owner of a store building in Sedalia, a lease for five years from January 1, 1902, to January 1, 1907, at a rental of $210 per month with privilege of renewal for another period of five years from that date, which would end January 1, 1912.

Early in 1906, while the lease was still in force, the leased building was destroyed by fire, and thereafter, on April 21, 1906, plaintiff and defendant entered into the written contract involved in this suit, the disposition of which suit depends, as hereinbefore stated, on the construction to be placed on said contract.

This contract cancelled the lease theretofore existing between the parties, and, in consideration of the plaintiff having cancelled the lease (which gave plaintiff the right to hold the leased property at a rental of $210 per month until January 1, 1912), de-

fendant Cassidy agreed to "erect *during the year 1906* on the lots described in said lease, a building suitable for retail business purposes, which build-- ing shall be rented to some desirable tenant at a rental price to be agreed upon by both parties to this con- tract." And further agreed that "of the rental price received for said first floor and basement, E. G. Cas- sidy shall receive $220 per month, and one-half of whatever sum in excess of that amount said property rents for from this date until January 1, 1912, and the Hail & Kibby Dry Goods Co. shall receive for the same period one-half of the amount said rent shall exceed the sum of $220 per month."

It is thus seen that in consideration of plaintiff releasing the rights it held under the old lease, the de- fendant agreed to erect a · building *during the year 1906,* and to rent it to a desirable tenant at a price agreed upon by plaintiff and defendant, and of "the rental price *received*" defendant agreed to pay plain- tiff one-half of "*whatever sum* in excess of that amount ($210 per month) *said property rents for* from this date until January 1, 1912."

On May 21, 1906, Cassidy, entered into a written contract with the Flower-Barnett Dry Goods Company whereby Cassidy agreed to erect the store building in question, and the Flower-Barnett Dry Goods Company agreed to lease said building for a term of five years and four months beginning September 1, 1906, and ending January 1, 1912, at a rental of $312.50 per month, "provided however, that the duty to pay rent *shall not begin under any circumstances until the said building is completed and ready for occupancy.*" Said contract also contained the further provision that "the said first party hereby agrees to deliver peaceable pos- session of said leased premises on the said first of September, 1906, and the said party agrees to accept said premises at said time *in case the first party shall have said premises ready for occupancy.*"

The rental price in this contract was agreed to by plaintiff pursuant to its contract cancelling the old lease. The price to be paid by the Flower-Barnett Dry Goods Company was the only item in the Flower lease which plaintiff's contract provided should be submitted to and agreed upon by plaintiff. The latter, under its contract, had no voice in the selection of a tenant, nor as to the character of the building to be erected. The only thing to be submitted to plaintiff was the rental price.

Defendant Cassidy proceeded to erect said building and did erect it by the latter part of December, 1906. It was not ready for occupancy, however, until some time in January, 1907.

The rent to be paid by the Flower Company was $312.50 per month which was $92.50 in excess of the $220 Cassidy was to receive, so that plaintiff's share was $46.25 per month up to the time plaintiff's renewal lease would end, had it been retained, which was January 1, 1912. The question in this suit is, when does plaintiff's right to this $46.25 per month begin?

Plaintiff claims that under its contract and defendant's contract with the Flower Company, it is entitled to $46.25 from September 1, 1906, the date defendant agreed in his Flower contract to finish the building. Defendant paid the $46.25 per month from and after February 1, 1907, but as the Flower Company did not get into the building, nor begin to pay rent thereon, until in the latter part of January, 1907, defendant refused to pay the above amounts prior to February 1, and plaintiff brought this suit for the $46.25 it claims to be due for each of the months of September, October, November and December of 1906, and January, 1907. The trial court held that inasmuch as the Flower Company was not required to pay, and did not pay, rent until said building was ready for occupancy, and inasmuch as defendant's agreement

with plaintiff did not provide for anything more than to erect the building during 1906, and to get plaintiff's consent to the price, therefore, plaintiff cannot complain because the building was not ready for occupancy prior to January 1, 1907. Consequently, the court rendered judgment for the $46.25 due for January, 1907, but not for the prior months. Plaintiff appealed.

We think the court did right. The contract between plaintiff and defendant is the one plaintiff must look to for the enforcement of its rights. It was made prior to, and is separate and independent of, the contract with the Flower Company. The only connection the latter contract has with the former is to fix the price of monthly rental. Plaintiff's contract did not specify when the defendant should commence the erection of the building nor when it should be ready for occupancy, except that it should be erected during 1906. Defendant being anxious to obtain rent from the Flower Company as soon as possible agreed with *it* to finish the building by September 1, 1906, but the Flower Company modified this agreement by the clause which released them from paying rent until it was finished. So far as plaintiff was concerned, the defendant could have contracted with the Flower Company to complete the building by January 1, 1907, as that was the only limit expressed in plaintiff's contract. It had no voice in the character or extent of the building to be erected, and therefore could not complain because, owing to changes and additions made in the building at the Flower Company's request, the building could not be completed by September 1, 1906.

But it is said plaintiff, by consenting to the price of rental per month, consented thereto with the agreement that rent should begin September 1, 1906, as a part of said price, and therefore, the agreement to finish and get rent from this date formed an element upon which plaintiff's consent was based. Perhaps so,

but, if so, that element was not a fixed and unqualified agreement to finish the building by September 1, 1906, or for the Flower Company to pay rent from that date. It was an agreement that if the building was finished and ready for occupancy by that time, rent would begin then, but if not, then rent would not begin until it was finished. And the only contract plaintiff had as to when it should be finished was defendant's agreement to finish it sometime during 1906. The trial court upheld plaintiff's right in that regard by compelling defendant to pay plaintiff its share of the rent after the expiration of that time limit, to-wit, after December 31, 1906, regardless of whether or not defendant received rent from the Flower-Barnett Dry Goods Company from that time till their occupancy of the building.

Taking the words of plaintiff's contract literally, as we have a right to do, we find that Cassidy agrees to erect the building in 1906, and that Cassidy "shall receive $220 per month" and that plaintiff shall receive "one-half of *whatever sum* in excess of that amount said property rents for" until January 1, 1912. Said building was erected in 1906 and said property actually rented for $92.50 per month from sometime in January, 1907, on till January 1, 1912. Defendant, therefore, complied with his contract to plaintiff by erecting the building in 1906, and fully complied with his contract as to the payment of one-half the rent received by him above $220 per month, except as to the month of January, 1907. The liability to pay for this month arises out of defendant's agreement with plaintiff to erect the building during 1906, and defendant's failure to pay for said month has been covered by the trial court's judgment. Plaintiff contends that its contract means that it is entitled to receive one-half of the excess rent contracted for, or one-half of the excess which Cassidy could have received had he complied with his con-

tract to—not the plaintiff, but to the Flower Company. But to make plaintiff's contract read thus we must interpolate something into it which is not there. Plaintiff is not suing on the Flower Company contract, nor partly on its own contract and partly on the Flower contract. It is suing solely on its own contract, and the other contract has nothing to do with the matter except as fixing the amount of rent per month. The judgment is affirmed. All concur.